Haynes, C. J.
In this case a petition in error is filed to reverse the judgment of the court of common pleas in a case wherein Sarah M. Culver was plaintiff,and John H. Ragan and Jacob Snyder were defendants.
The case was beard upon the petition and a demurrer thereto, the petition being for an injunction,and setting out that the plaintiff, Sarah M. Culver, is the owner of the west thirty two feet of lot number one hundred and twenty nine (129) in the village of Bowling Green; that she and her husband for many years have, and still occupy a brick dwelling house thereon.and that its value is six thousand dollars; that the defendant, Ragan, has secured a lease of the lot immediately west of her lot, and is about to move an old unsightly frame building,one story in height, from another portion of the village, and will use it to carry on the business of horseshoeing, general blacksmithing and repairing of all kinds of vehicles; that he will place in the building, forges, anvils and other tools necessary to carry on such business; that he will use in his blacksmith business, large quantities of bituminous coal, thereby causing to be generated large quantities of smoke and soot which will escape through a low chimney in said shop, and be carried by the wind against, upon and into her house; that the soot and *229 dirt will settle on her roof, and she will be unable to use her cistern water for domestic purposes; that she has seven windows on the west side of her house which she must keep open, and the said smoke will enter her house and befoul it and the contents; that the stench of burning hoofs and hoof parings incident to horseshoeing will pass from the shop to her dwelling and cause her and her family great discomfort and annoyance; that the noxious'1 smells and gases from the odor of the horses brought to and kept standing in said shop will float upon the atmosphere and into her rooms; that there will be a constant stamping and neighing of horses, and constant noise from the anvils which will be very disagreeable; that because of the very inflammable character of the furnaces to be used therein, the sparks from the chimneys to said furnaces will greatly endanger her dwelling and prevent her from obtaining re-insurance upon her dwelling, and that the value of her property will be greatly reduced if the defendant is permitted to place and use said building as aforesaid.
An injunction was granted. A demurrer was filed to the petition which was overruled, and the defendants not desiring to plead further, appealed the case to the court.
We think the court ought not to have allowed the injunction in the case, at the time it did. In the first place, carrying on the business of a blacksmith is a usual and very respectable business. It must be carried on somewhere. It certainly, unless there is some extraordinary reason for not carrying it on, should be allowed to be carried on in' the village of Bowling Green.
- This building was to be placed on a lot near the business portion of the village, and the right to do that we think is perfect in the defendant. He has a right to put his building there unless there is some ordinance or some authority of the village to restrain him from putting it there. The defendant has a right to carry on his business of blacksmith *230 ing if he does it in an ordinary and peaceable manner, and the court should have waited.until the work was commenced and the manner of carrying on that work was ascertained before it prevented the use of the building at all.
It may be that in carrying off smoke the chimney might, be so constructed as to carry it over and beyond the dwelling in question. It is true that coal smoke is not a very nice thing either in a city or village, but if you use coal you must have smoke. As used in a city, it comes down sometimes in large clouds, and is to’ some extent quite annoying, but nevertheless, people who live in cities must endure inconveniences and annoyances of that kind for the common benefit of all; They cannot have all the benefits of solitude and all the benefits of a city at the same time.
We think, also, that people would have a right to bring their horses to the shop to be shod, and in standing there they will be no more offensive than farmers bringing their horses to town and hitching them to hitching rails on the street,and allowing them to stand there.
The work in the shop can be carried on, we think, without any great amount of inconvenience or annoyance to the plaintiff. It is possible there might be at times some noise from the anvils as there is noise from wagons or omnibuses or street cars, and a thousand and one things in a city. People who live in cities may live where street cars change and cross and where there is a continuous noise. In fact, upon the main streets of a city like Toledo there may be so much noise that a person can hardly do business, yet this has to be endured in a city. We think that blacksmithing is a business that has to be done, but if the defendant was carrying it on in an unusual manner, he could be restrained.
It was my duty to sit in a case in Cleveland wherein the Transfer Company of Cleveland had established in the upper part of the city on a lot adjoining,I think, the house of Judge Hutchins, a barn where they kept horses and carri *231 ages in order to reach the railroad depots quickly, and there was great complaint made in that case in regard to horses standing there, from the odors that arose from the urine,etc., and after a full discussion of the case the court made some orders that should limit the manner in which the horses were to be kept, but we did not attempt to abate that 'business. They had the same question in regard to the car stables located on Ashland Avenue in ' Toledo, but they never obtained an order from the court to have them removed. They were controlled to some extent in the manner of carrying them on, but they were not abated.
Means & Haskell, for Plaintiff.
A. R. Campbell, for Defendants.
We are very clearly of the opinion in regard, to the case under consideration, that the action of the court was premature, and that the judgment of the court should be reversed, and the case sent back for hearing and trial. As we have indicated, we think no order should be granted by the court until there is an actual possession taken of the premiseSj and some action on the part of the defendant which indicates the manner in which he is to exercise his trade. There is no reason why the defendant should be compelled to go outside of the village limits to do business, or why a person who wishes to have his horse shod should have to follow the shop outside of the village limits.
The judgment of the court of common pleas is reversed and the cause remanded for trial.